# COURT OF ERRORS AND APPEALS.

## JUNE TERM.

## 1877.

MARGARET B. BUSH, respondent below, appellant, *v.* WILLIAM BUSH ET AL., petitioners below, appellees.

To entitle a widow to dower in intestate lands of her husband, he must have had during their marriage title or right, legal or equitable, thereto in fee simple.

If his title or right to such intestate lands constituted a legal estate of inheritance in fee simple in them, then he must also have been seized of them in law or in fact some time at least during their marriage to entitle her to dower. He must, during the time mentioned, have been seized of a legal estate of freehold in possession with a like estate of immediate inheritance in fee simple in remainder or reversion; the freehold and inheritance must be consolidated and have been in the husband *simul et semel* some time, at least, during their marriage to entitle her to dower in them. Nor is she dowable in contingent or executory legal estates of inheritance in fee simple as to which the husband dies intestate. Therefore, in a devise of lands and tenements to a trustee in trust for another during her life, and at her death to her lawful issue in fee simple if she should leave any to survive her, but if not, then to her two brothers, their heirs and assigns, forever. One of the brothers died intestate in the lifetime of the *cesqui que trust*, and she died without issue surviving her, it was held that it was a devise of the legal estate to him in one undivided half part of them in contingent remainder in fee simple, expectant and dependent on the uncertain and dubious determination of the legal estate devised to the trustee for the life of the *cestui que trust*, and her death without issue surviving her, and as he died before her he was never seized in law or fact, or entitled to the possession of them, and for which his widow who survived the *cestui que trust* was not entitled to dower in the moiety of them so devised to him in fee simple.

It was not a devise to him, however, of any equitable right or title to the lands and tenements in question, much less of an equitable estate therein in fee simple. No one named or contingently provided for in the devise could

245

have taken any equitable right or title to or any equitable estate in them by virtue of the devise, except the *cestui que trust*, and she took an equitable estate but for the term of her life only in them.

THIS was an appeal from a decree in the Court of Chancery in and for New Castle County, on a petition for partition of certain real estate devised in the last will and testament of Samuel Bush, deceased, to his son, George Bush, also since deceased intestate, at the suit of the appellant, Margaret B. Bush, his widow, who claimed as such a right of dower therein under a devise to him by his father, from so much of the decree of the chancellor in the partition as disallowed her claim of dower in the real estate so devised to him.

The devise in the will of Samuel Bush, to his son George Bush, her husband, was as follows :

"ITEM.—I give, devise, and bequeath unto my son, David Bush, his executors and administrators, the following real and personal property, to be held by him and them in trust during the natural life of my beloved daughter, Rebecca, the wife of Frederick Leonard, Esq., to wit : My house and lot on the southerly side of Hanover Street, between Walnut and Poplar Streets, be the contents thereof more or less, with the improvements and appurtenances, in the borough of Wilmington aforesaid ; my house and lot on the westwardly side of Shipley Street, between Front and Second Streets, in the said borough, be the contents thereof more or less, with the improvements and appurtenances ; my house and lot in the said borough on the west side of Orange Street, between Front and Second Streets, adjoining lands of George Griffin, Peter Johnson, and others, be the contents thereof more or less, with the improvements and appurtenances ; my lot of ground in said borough, bounded by Shipley and Water Streets, property late of Enoch Moore, and the Christiana Creek, with the improvements and appurtenances ; and also my lot of marsh in Holland's Creek Marsh, in the hundred of New Castle and county aforesaid, be the contents thereof more or less, with the improvements and appurtenances ; also thirty shares of Wilmington and Kennett Turnpike stock, and also the sum of one thousand dollars to be paid by my son,

George Bush, out of my plantation hereinbefore devised to him, subject to the payment thereof, and it is my mind and will that the said trustee, his executors and administrators, after deducting thereout the necessary moneys for repairs and taxes, pay over regularly and half-yearly for the sole and separate use of my said daughter, Rebecca Leonard, during her natural life as a *femme sole*, without any control or direction whatever of or by her said husband, Frederick Leonard, or the creditors of the said Frederick Leonard, the rents, interest, issues, profits, and incomes of the said real and personal estates so devised and bequeathed in trust as aforesaid, and that my said daughter Rebecca's receipts, signed by her, shall be full discharges therefor. And I do give, devise, and bequeath unto the lawful issue of my said daughter Rebecca, that shall be living at her decease, all the said real and personal estate so given, devised, and bequeathed as aforesaid in trust for the separate benefit of her, my said daughter Rebecca, during her natural life, the real estate in fee simple and principal of personal absolutely ; but if my said daughter Rebecca shall die without issue to survive her, then and in such case it is my will that all said real and personal estates so devised and bequeathed for the sole benefit of my said daughter Rebecca during her natural life shall go to my two sons, David Bush and George Bush, and upon such event I do give, devise, and bequeath the same to them, my said two sons, David and George, their heirs and assigns forever."

And the codicil thereto, bearing date June 25th, 1830, which is as follows, viz.:

"ITEM.—And further, it is my will and desire that if my son George Bush shall die without issue, arriving at the age of twenty-one years, that then in such case I do hereby give, bequeath, and devise the estate given, bequeathed, and devised to him in my said last will and testament, to the children of my son David Bush, and to their heirs and assigns forever, subject to the right of dower of the wife of my said son George Bush.

"And lastly, it is my desire, that this, my present codicil, be annexed to and made a part of my last will and testament to all intents and purposes."

The facts of the case will appear from the opinion of the chancellor, delivered in the court below as follows :

George Bush, one of the devisees named in the will, survived the testator for some years and died, leaving to survive him a widow, the said Margaret Bush, and several children as his heirs-at-law, who, or the heirs of whom, are parties to this proceeding. Rebecca Leonard, the daughter of the testator, survived both the testator and the said George Bush many years, but has very recently died, leaving no issue to survive her. George Bush never was in possession and was never entitled to the possession during his lifetime, of any of the lands which are the subject of these proceedings. Margaret Bush, his widow, claims dower in the undivided interest or share of the estate above devised, which would have passed, by the terms of the devise, to her husband, had he survived Rebecca Leonard. Her claim is based specially upon the supposed peculiar words of our act of assembly entitled, " Intestates, Real Estate," section 1 of which provides that " when any person having *title* or *right*, legal or equitable, to any lands, tenements, or hereditaments in *fee simple*, shall die intestate as to the same, such lands, tenements, or hereditaments shall descend and pass in fee simple to his kindred in co-parcenary, according to the course or order therein mentioned."   Among the provisions of said section, is this : " If the intestate leave a widow, and also any child, or lawful issue of such child, said widow shall have one-third part of the real estate aforesaid for the term of her life as tenant in dower, etc."   Dower, at common law, exists where a man is seized of an estate of inheritance and dies in the lifetime of his wife. In that case she is, at common law, entitled to be endowed for her natural life of the third part of all the lands whereof her husband was seized, either in deed or in law, *at any time during the coverture,* and of which any issue which she might have had might, by possibility, have been heir.   To the consummation of the title to dower three things are, accordingly, requisite—marriage, seizin of the husband, and his death. It is necessary that the husband shall be seized at the time of marriage or during coverture, either in fact or in law. The husband must be seized of a freehold in possession, and of an estate of immediate inherit-

ance in remainder or reversion, to create a title to dower. The freehold and the inheritance must be consolidated and be in the husband *simul et semel* during the marriage to render the wife dowable.

If a freehold in a third person intervenes between the husband's freehold for life and the inheritance limited to him after the determination of such intervening freehold, and such intervening freehold does not determine during the coverture, the widow will not be entitled to dower.

If the testator, Samuel Bush, had devised these premises to his son, George Bush, for life, remainder to his son, David Bush, in trust, for his daughter, Rebecca Leonard, during her natural life, but in case the said Rebecca should die without issue to survive her, then to the said George in fee, and George had afterward died, leaving Rebecca to survive him, and she had subsequently died without issue to survive her, George's heirs-at-law would have taken the estate, but his widow would not have been entitled to dower therein, for the reason that George never, at any time during the coverture, had a fee simple in the lands, and never had title or right, legal or equitable, thereto in fee simple. In such case he would have had a legal title and right to the freehold, but not to the immediate inheritance; and, upon the death of Rebecca, without leaving issue to survive her, his heirs would have been entitled to the inheritance under the terms of the will, but his widow would not have been entitled to dower because at no time during coverture would the freehold and the inheritance have been consolidated and been in him *simul et semel.*

George Bush, the deceased husband, never had any freehold estate in the lands mentioned in these proceedings. That was outstanding in a trustee for the benefit of a *cestui que trust*, who survived George Bush many years. He never, during his lifetime, had any present interest in them, and neither he nor his heirs could, by virtue of any devise contained in the will of Samuel Bush, ever have any future interest therein except upon the contingency of Rebecca Leonard's dying without issue to survive her. Neither the freehold nor the inheritance of these lands, under the terms of Samuel Bush's will, was ever in

George Bush, the husband, in his lifetime, only a possibility of becoming entitled to one-half of both by the death of Rebecca without issue to survive her before his own death, which did not occur. Upon her death afterward without leaving issue the lands passed in common to the heirs-at-law of the said George Bush and to David Bush by the express terms of the will of Samuel Bush, the testator.

Under our intestate law, to entitle the widow to dower, the husband must have had title or right, legal or equitable, to lands, tenements, or hereditaments in *fee simple*. What is a *fee simple* in lands, tenements, or hereditaments? It is (says Blackstone) "the highest and largest estate that is capable of being enjoyed." "He that is tenant in fee hath in him the *whole* of the estate." In illustration of the doctrine of remainders he says: "If a man seized in fee simple granteth lands to A for twenty years, and after the determination of the said term, then to B and his heirs forever, here A is tenant for years, remainder to B in fee. In the first place, an estate for years is created or carved out of the fee and given to A, and the residue or remainder of it is given to B. But both these interests are, in fact, only one estate, the present term of years and the remainder afterward, when added together, being equal only to one estate in fee. They are, indeed, different parts, but they constitute only one *whole;* they are carved out of one and the same inheritance; they are both created, and they both subsist together, the one in possession, the other in expectancy. So if land be granted to A for twenty years, and after the determination of said term to B for life, and after the determination of B's estate for life, it be limited to C and his heirs forever, this makes A tenant for years, with remainder to B for life, remainder over to C in fee. Now here the estate of inheritance undergoes a division into three portions; there is, first, A's estate for years, carved out of it, and after that B's estate for life, and then the whole that remains is limited to C and his heirs.

"And here, also, the first estate, and both the remainders for life and in fee, are one estate only, being nothing but parts or portions of one entire inheritance, and if there were a hundred remainders it would still be the same thing, upon a principle

grounded in mathematical truth, that all the parts are equal and no more than equal to the whole."

" Again," he says, " a particular estate, with all the remainders expectant thereon, is only one fee simple, as forty pounds is part of one hundred pounds, and sixty pounds is the remainder of it; wherefore after a fee simple once vested there can no more be a remainder limited thereon than after the whole hundred pounds is appropriated there can be any residue subsisting."

The testator, Samuel Bush, devised the real estate mentioned in these proceedings to David Bush, his executors and administrators, for his daughter, Rebecca Leonard, in trust during her natural life. This was a devise of the property for life. He then devised the property after the death of his daughter to such of her issue as might be living at her death in fee simple. He thus disposes, for the present, of his whole estate in the premises; the freehold to David Bush in trust for Rebecca Leonard, and the remainder in fee; the freehold and remainder though being separate parts of, yet constituting together the whole estate, or the fee simple thereof. The testator, however, provides for a possible contingency, that of there being no issue of his daughter living at the time of her death, and in that event, and only upon the happening of that contingency, he devises the said real estate to his two sons, David Bush and George Bush, their heirs and assigns, forever.

Such a contingent or executory interest has none of the distinguishing qualities of a title or right in fee simple. It is what is denominated a possibility; and, although all contingent estates of inheritance, as well as springing and executory uses and possibilities, coupled with an interest, where the person to take is certain, are transmissible by descent and devisible and assignable, it has never been held that any such interest constitutes title and right to land in fee simple. When the contingent estate of inheritance becomes a vested estate in fee simple in possession, the right to dower, then and then only, becomes possible. Before the contingent interest or possibility in this case, under the will of Samuel Bush, became vested in possession, George Bush died. It could not so vest in him but vested in

his heirs, free from any claim or right to dower by his widow therein.

The act relating to intestates' real estate has been on the statute book·for forty-nine years, during which time it has never received the construction now sought to be given to it. The design of the act, so far as it relates to right of dower, was to remedy what was by many, if not generally, considered an unjust discrimination in favor of the husband by allowing a right to courtesy in equitable estates, and against the wife by denying a right to dower in such estates. The act, therefore, gave a right to dower to the wife in every species of estates in which the husband might be entitled to an estate by the courtesy. It was not designed by passing that act, and such is not the legal effect of the act, to destroy any of the previous requisites to an estate in dower, except that which confined it to a legal estate. For these reasons I decide that Margaret Bush, widow of George Bush, is not entitled to any right of dower in the real estate subject to partition in these proceedings, nor to interest on any of the money which may arise from a sale of the same under a decree in this cause.

*Patterson*, for the appellant, after reading the petition, the decree of the chancellor, his opinion in the court below, and the provision in regard to dower in the real estate of intestates : *Rev. Code, chap.* 85, *sec.* 1, *par.* 6, *p.* 515; *Digest of* 1829, *p.* 316 : " When any person having title or right, legal or equitable, to any lands, tenements, or hereditaments in fee simple, shall die intestate as to the same, such lands, tenements, or hereditaments shall descend in fee simple to his kindred in coparcenary, according to the following course or order, to wit:" then, after prescribing in the next five paragraphs the canons of descent under it, the sixth paragraph on the subject of dower in such intestates' estates prescribes as follows : " If the intestate leave a widow, and also any child or lawful issue of such child, said widow shall have one-third part of the real estate aforesaid for the term of her life as tenant in dower ; or if there be no child of the intestate nor lawful issue of such child, the said widow shall have one moiety or equal half part of the real estate aforesaid to hold to her for the term of her life after the manner

of tenant in dower; or if there be no kin or heir of the intestate, the said widow shall hold all of the real estate aforesaid for the term of her life," said that the chancellor, it would be observed, had taken the ground in the opinion delivered by him in the court below that it was the intention of the legislature by the provisions of the statute just read to abolish the invidious distinction which existed at common law between a tenant by the courtesy and a tenant in dower in reference to an equitable estate in lands. But was not that an unwarrantable assumption? There were three things the law favored, "life, liberty, and dower," and that was a well-established precept and maxim of the common law long before the statute was enacted.

The chancellor's reasoning to the middle of the sixth page of the printed copy of his opinion was predicated on the common-law doctrine of "seizin" in the husband during the marriage and in his lifetime to entitle his widow to dower, but which was not only superseded in fact but intentionally so, by the provisions of the statute just read in case of an equitable title or right to real estate in contradistinction to a legal title or right to the same, as the trustee, and not the *cestui que trust*, is always seized of the legal estate in contemplation of law. The statute cut up by the roots the old common-law requisites of legal estate and seizin in reference to the allowance of dower out of intestates' estates when the right and title of the intestate husband to them was equitable instead of legal. The law, as distinguished from equity, recognized rights as such, and as distinct from things, such as rights to things, and in regard to real estate as distinct from the body of the estate itself and from seizin. That principle was recognized in the Court of Errors in the State of New York in the case of *Jackson* v. *Varick*, 7 *Cow.* 238; 2 *Wend.* 166, in which it was decided under their statute of wills containing expressions very similar to ours just read, that the power was given to dispose of by will of any property, right, or interest in real estate, whether the same was a vested freehold in possession of the testator or a mere descendable hereditament or interest therein in respect to which the testator had only a right of entry or a mere right of action.

It had been conceded that George Bush, before the happening

of the contingency of Mrs. Leonard's death without leaving issue to survive her, he then having issue living and leaving issue living at his death, had a contingent remainder in fee simple in the real estate devised, or, as it was described in some of the books, " a vested contingent remainder in fee " therein, and by the common law that was a descendible interest, according to the case of *Jones* v. *Roe*, 3 *T. R.* 88, it was also divisible, and according to other English decisions it was assignable. 4 *Kent's Com.* 261, 284; *Right* v. *Coeber*, 11 *E. C. L. Rep.* 718, and the cases there cited. The whole reasoning of the courts in the case of *Jones* v. *Roe*, and in that of *Lawrence* v. *Bayard*, 7 *Paige's Ch. Rep.* 70, and other cases recognized and were based upon that idea. Where one had nothing he could pass nothing. The fact that he has something which can pass from him by descent, or which he can devise or assign, was evidence enough to satisfy any requirement of the law of a present interest in it— whether enough to satisfy the requirements of our statute in that respect was another question which he would meet hereafter. But all contingent possible estates are divisible, says Chancellor Kent, for there is an interest in all of them. 4 *Kent's Com.* 511.

The words lands, tenements, and hereditaments include whatever may be inherited, be it corporeal or incorporeal, real, personal, or mixed. 2 *Black. Com.* 17. They also include certain rights in or to real estate descendible and divisible, although they are intangible and incapable of seizin, as in the case with all incorporeal hereditaments. *Jackson* v. *Varick*, 7 *Cow.* 238; *S. C.*, 2 *Wend.* 166, 205. George Bush died intestate as to the right and interest in the lands and tenements devised to him in fee, as tenant in common with his brother David Bush, by the will of his father, Samuel Bush. It was true that in one respect of the case it did not vest until after his death, which was in the lifetime of Mrs. Leonard. Still it was a right or interest in the lands and tenements devised of which the law took notice, recognized, and protected, and which was descendible, divisible, and assignable at law. A contingent remainder in fee descends to his heirs-at-law on the death of the devisee before it vests— *Fearne on Cont. Rem. and Exec. Devises*, 529, 535—and con-

tingent remainders, both in real and personal property, are transmissible, like vested interests. 4 *Kent's Com.* 284 ; *Winslow v. Goodwin,* 7 *Met.* 367 ; *Cook* v. *Hammond,* 4 *Mason* 467. The claim of dower in this case arising and assignable out of said interest after it became vested in possession, it should be again observed, was not under the common law but under our statute. The question was, Had George Bush a fee-simple title or right to the lands, tenements, and hereditaments in question, of which he died intestate ? If he had his widow was entitled to have dower assigned to her out of it. And when should it be assigned to her ? On her petition if the real estate at the time of the intestate's death be in his possession, or if at the time of partition prayed it shall have come to the possession of those claiming under him. *Rev. Code* 516, *sec.* 3. This, he had already shown, was an interest which could descend, and which did descend. The very parties who had appeared to oppose the assignment of dower to the widow claimed the same lands and tenements by descent under our intestate laws, the very property out of which she under the same law claimed dower, and the very section of it which gives them their rights as heirs-at-law conferred on her the right of dower. If it was a descendible interest it was also a dowerable interest. *Rev. Code* 514, 515, 508. The rights originate together and run side by side during the life of the widow. Could it be a right in fee simple descendible to the heirs-at-law, and of which they could have partition when they came into possession of it, as they did by the death of the tenant for life and *cestui que trust,* and was it not also the same for the purpose of giving the widow her dower therein ? The descent in fee simple to them with the right of dower to the widow, therefore, must stand or fall together.

And such were the views expressed by Chancellor Bates in the recent case of *Isabella Cornog, widow, against the executors of her husband, Abraham Cornog, deceased,* in the Court of Chancery in New Castle County, for he remarked in that case, noting the marked difference between the right of dower conferred by our intestate law and the right of dower conferred by the statute of 1816, " Our intestate law allows to the widow dower,

or, more properly speaking, her thirds, out of any estate in lands, legal or equitable, which descend to the heir-at-law, the policy of this statute being to place the widow on an equal footing with the heir. But for all other cases the right of dower is defined by the statute of 1816, *Rev. Code, chap.* 87, *sec.* 1, which gives dower only when the husband shall die seized of an estate of inheritance in any lands or tenements within this State." He employed the term "any estate in lands, legal or equitable, which descend to the heirs-at-law," as synonymous with the statutory words in the intestate `law, "title or right, legal or equitable, to any lands, tenements, or hereditaments in fee simple." The fact that at the death of George Bush the interest in question had not yet vested in possession made no difference, for that case was contemplated and provided for in the statute. The estate was not in the actual possession of the intestate at the time of his death, but it had come to the possession of those claiming under him at the time of partition prayed. *Rev. Code, chap.* 85, *secs.* 1, 3, 4. If the claimant in dower had had issue could that issue by possibility have taken the estate in question? If it could, she was entitled to be endowed out of it. 2 *Washb. on Real Property* 153, *sec.* 4, 154, *sec.* 7. By construction of the Pennsylvania statute of 1833, which was quite similar to ours in relation to dower in intestate real estates, it was held that there was a dower interest in a vested remainder, although subject at the death of the husband of the claimant in dower to an outstanding life estate in another. *Cotes' Appeal, Law & Eq. Rep., Vol.* 1, *No.* 6, *p.* 127.

Contingent and executory interests, whether in real or personal estate, are transmissible to the representative of a party dying before the contingency takes effect on which they depend. *Fearne on Contingent Remainders, etc.*, 554; 2 *Saund.* 388, *n.* 1; *Pinbury* v. *Elkin,* 1 *P. Wms.* 564; *Chauncey* v. *Graydon,* 2 *Atk.* 216; *Peck* v. *Parrot,* 1 *Ves. Sr.* 236; *Barnes* v. *Allen,* 1 *Bro. C. C.* 181; *Perry* v. *Woods,* 3 *Ves.* 234; *Massey* v. *Hudson,* 2 *Meriv.* 130. And the English authorities showed that there was no difference between vested and contingent interests in that respect. In *Chauncey* v. *Graydon,* just cited, Lord Chancellor *Hardwick* remarked that when either real or per-

sonal estate is given upon a contingency, and that contingency does not take effect in the lifetime of the devisee, yet if real his heir, and if personal his executor, will be entitled to it.   In England since the statutes 3d and 4th William IV, dower extends to land in which the husband had a right though unaccompanied with seizin.   *Washb. on Real Prop.* 148.   It had been held in this State prior to the passage of the present law in relation to real estate of intestates, which was in 1827, and as early as in the year of 1818, that the widow of a *cestui que trust* was entitled to dower.   *Cooch's Lessee* v. *Gerry*, 3 *Harr.* 283, *note a.*

*Harrington,* for the respondents:   Samuel Bush, the testator, died August 8th, 1837; George Bush, his son, died intestate, September 22d, 1863, leaving a widow, Margaret B. Bush, the appellant, and three children.   Rebecca Leonard died March 28th, 1875, without issue her surviving.   In the case below in the Court of Chancery in and for New Castle County, for partition of the lands and tenements devised, the chancellor decided that Margaret B. Bush, the widow of George Bush, was not entitled to any right of dower in the real estate subject to partition in the proceedings, nor to any interest on any of the money which should arise from a sale of the same under a decree in the cause.

The laws of Delaware relating to the subject declare that "the widow of any man dying since the 16th day of February, A. D. 1816, who during their marriage was seized of an estate of inheritance in any lands or tenements within this State, shall have the third part of all the lands and tenements whereof her husband was seized as aforesaid, at any time during their marriage, to hold to her as tenant in dower for and during the term of her natural life, free and discharged from all and every alienations, covenants, debts, liens and incumbrances made, entered into, contracted, or created by the said husband after the intermarriage, unless she shall have relinquished her right of dower therein by her own voluntary act, according to existing laws of this State."   *Rev. Code of* 1874, 533.   But the present claim to dower was based particularly upon the act

entitled of " Intestates' Real Estates," wherein it is provided that "when any person having title or right, legal or equitable, to any lands, tenements, or hereditaments, in fee simple, shall die intestate as to the same, such lands, tenements, and hereditaments shall descend in fee simple," etc., etc., subject to the rights of his widow, that is to say, "if the intestate leaves a widow, and also any child or lawful issue of any such child, said widow shall have one-third part of the real estate aforesaid for the term of her life as tenant in dower," etc., etc.    *Rev. Code of* 1874, *pp.* 514, 515.

Dower at common law exists where a husband is seized of an estate of inheritance in land, tenements, and hereditaments, and dies in the lifetime of his wife.  She is entitled to have and to hold the one-third part of them for the term of her life as tenant in dower.  The seizin of the husband must be during coverture, and must be a seizin in fact or in law.  The statute first referred to had long been received as a declaration only of the common-law rule of dower, and the words "seized" and "seizin" employed in it had always been construed in their common-law sense as applicable to legal estate of inheritance only, but by the statute last referred to a widow is dowable out of an equitable estate of her husband in intestate lands only.  For all other cases, and for all legal estates in contradistinction to equitable estates, of a husband in lands, tenements, and hereditaments, the right of dower is defined by the statute first referred to.    *Case of W. Johnson's Widow, Chancellor Ridgely's Notes*, 3 *vol.* 396, in 1821 ; *Lofland and Wife* v. *Phillips, Ibid.*, 4 *vol.* 152, in 1823 ; *Bloxom* v. *Hudson, Ibid.*, 4 *vol.* 238, in 1823 ; *Case of John M. Darby's Widow, Chancellor Harrington's Notes*, in 1838.  The object of the act in relation to intestates' real estate, so far as it relates to the rights of dower, was to give the widow dower in the equitable estate of a husband dying intestate, and in that respect to abolish the distinction between the right to courtesy and the right to dower at common law.  It was not designed by passing that act, and such was not the legal effect of it, to destroy any of the previous requisites to an estate in dower, except that which confined it to a legal estate.  A title or right, legal or equitable, to lands, ten-

ements, or hereditaments, in fee simple, was still the prerequisite.

The question here was alone as to the degree of interest in the lands with which George Bush was invested during coverture or at the time he died intestate. The statute requires title or right in fee simple. What was that? The highest and largest estate, the greatest interest that a person can have or enjoy, the entire interest and estate in the land. George Bush never had such an estate in the lands and tenements in question. The testator devised the lands in trust for his daughter, Mrs. Leonard, for her life, and at her death to her issue living at her death in fee simple. That was the whole estate in the lands. There was a possible contingency that there might be no issue of his daughter living at his death, hence in that event, and upon the happening of that contingency only, he devised them over to his sons David and George Bush also in fee simple, and hence it was .that on the happening of that contingency only did any estate whatever come to George Bush or his heirs-at-law. It was but a contingent or executory interest in him, dependent on the uncertainty of Mrs. Leonard's dying without leaving issue to survive her, for if she had left issue to survive her neither he nor his heirs-at-law could have taken any estate in the lands under and by virtue of the devise over to him and his brother David in fee simple. It was therefore but a mere possibility in him, never a vested interest or estate in him, as he died before Mrs. Leonard, and he was never entitled to possession of or to entry into the land.

The following are some of the requisites to entitle a widow to dower at common law and under our dower act. The estate of the husband must be one which the issue of the wife may inherit. The issue should be able to take not only as heir to the father, but also in virtue of a seizin by him during coverture upon which her claim to dower is founded. 1 *Scrib. on Dow.* 216 ; *Park. on Dow.* 79. The estate of the husband must confer a right to the immediate freehold. Dower is not allowed in estates in remainder or reversion expectant upon an estate of freehold, and hence if the estate of the husband be subject to an outstanding freehold estate which remains undetermined

during the coverture no right of dower attaches. 1 *Scrib. on Dow.* 217 ; *Durando* v. *Durando,* 23 *N. Y.* 331 ; *S. C.,* 32 *Barb.* 529 ; *Green* v. *Putnam,* 1 *Barb.* 500 ; *House* v. *Jackson,* 50 *N. Y.* 161 ; *Otis* v. *Parshley,* 10 *N. H.* 403 ; *Fisk* v. *Eastman,* 5 *N. H.* 240 ; *Arnold* v. *Arnold,* 8 *B. Monroe* 202 ; *Blood* v. *Blood,* 23 *Pick.* 80. But to exclude dower the preceding estate must be a freehold interest. An estate for years or other mere chattel interest furnishes no impediment to a title of dower. This distinction is placed upon the ground that such an interest does not interfere with the seizin of the immediate freehold, but rather protects and preserves that seizin, the possession of the party having the chattel interest being regarded as the possession of the owner of the freehold. Where the freehold is suspended during all the time of coverture, no dower attaches. The husband must be vested with the freehold and inheritance *simul et semel,* " at once and together." They must meet in him as one integral estate and not as several or successive estates. 1 *Scrib. on Dow.* 219 ; 4 *Kent's Com.* 39. The interposition of a vested freehold estate in a third person, between the freehold and the inheritance of the husband, will during the continuance of that estate prevent dower from attaching. The inheritance as well as the freehold must be in possession. 1 *Scrib. on Dow.* 221 ; *Moore* v. *Etsy,* 5 *N. H.* 479 ; *Dunham* v. *Osborn,* 1 *Paige* 634 ; *Eldredge* v. *Forrestal,* 7 *Mass.* 253. The interposition of a *possibility,* so that it be of a freehold nature, between the life estate and inheritance of the husband so long as the possibility exists, will prevent a title of dower from attaching. Its effect is not merely to defeat the right of dower upon the happening of the possibility, but to absolutely prevent it from coming into existence, unless the possibility be determined during the coverture. It is upon this principle that dower is denied to estates held in joint tenancy. 1 *Scrib. on Dow.* 234. George Bush's heirs acquired title directly from the will of Samuel Bush upon the happening of the contingency long after George Bush's death. George Bush never had any title at all.

*Patterson* replied.

*Comegys, Chief Justice:* This is the first time, so far as we have any knowledge, that the question whether a widow is dowable of a remainder has been raised in this State. The question has been made by the learned counsel for the widow of George Bush, and has been argued by him with ability and ingenuity, and he asks this court, with a confidence showing his own belief in her right, that we should reverse the decision made against her by the chancellor and sustain this appeal taken by her from it. Having respect only to all the knowledge we had acquired, as students of the law and afterward in our practice at the bar, we should have said unhesitatingly, if the question had been presented for us, without argument made or authority cited, that the decree of the chancellor ought to be sustained. But we felt ourselves required to lay aside, so far as we might, all previous opinions upon the subject, and consider it as one with respect to which we had no impressions whatever. This seemed to us, in justice to the case, as presented by the appellant's counsel, to be the proper course.

Samuel Bush, by his will, dated the 4th day of November, A. D. 1829, and duly proved and allowed by the (then) register of New Castle County, devised, *inter alia*, as follows:

"Item.—I give, devise, and bequeath unto my son, David Bush, his executors and administrators, the following real and personal property, to be held by him and them in trust during the natural life of my beloved daughter, Rebecca, the wife of Frederick Leonard, Esq., to wit: my house and lot, etc., etc. (here describing the property), and it is my mind and will that the said trustee, his executors and administrators, after deducting thereout the necessary moneys for repairs and taxes, pay over regularly and half yearly for the sole and separate use of my said daughter, Rebecca Leonard, during her natural life as a *femme sole*, without any control of or by her said husband, Frederick Leonard, or the creditors of the said Frederick Leonard, the rents, interest, issues, profits, and incomes of the said real and personal estates so devised and bequeathed in trust as aforesaid, and that my said daughter, Rebecca's, receipts signed by her shall be full discharges therefor. And I do give, devise,

and bequeath unto the lawful issues of my said daughter, Rebecca, that shall be living at her decease, all the said real and personal estate so given, devised, and bequeathed as aforesaid in trust for the separate benefit of her, my said daughter, Rebecca, during her natural life, the real estate in fee simple and principal of personal absolutely; but if my said daughter, Rebecca, shall die without issue to survive her, then and in such case it is my will that all said real and personal estates so devised and bequeathed for the sole benefit of my said daughter, Rebecca, during her natural life, shall go to my two sons, David Bush and George Bush, and upon such event I do give, devise, and bequeath the same to them, my two said sons, David and George, their heirs and assigns, forever."

It is not disputable that by the above clause in the will of Samuel Bush there was devised by the testator to his daughter, Rebecca Leonard, a trust estate for life, with a legal contingent remainder in fee simple to any issue she might leave to survive her, and a further remainder in fee, contingent upon the event of her dying and not leaving issue to survive her, to George Bush, the husband of the appellant, and his brother David Bush. It appears, as a fact in the case, that the appellant's husband died in the lifetime of his sister, Mrs. Leonard, the *cestui que trust*, and that she afterward died also without ever having had any issue. The contingency therefore happened upon which the remainder to George Bush, the appellant's husband, and his brother, David Bush, was to take effect in possession; and it did take effect by then vesting in David Bush, living at her death, and in the heirs-at-law of George Bush, who died intestate.

By the law of the land contingent remainders are descendible to the heirs-at-law of those who own them; and therefore, in this case, the heirs-at-law of the appellant's husband, George Bush, became entitled, upon the death of their father intestate, to one equal undivided half part of the premises devised by the testator in the above clause of his will. We are thus brought to the consideration and decision of the question whether or no, by the law of this State, a widow is dowable of an estate of inheritance of which her husband never had any possession nor

the right to any; in the case before us it was a contingent remainder that belonged to him. And we may say that for this question there is, in our opinion, no distinction between a vested remainder in fee simple with an intervening freehold estate outstanding, and a contingent remainder in fee simple. Both, with respect to the question before us, are alike.

What is the law of this State with respect to the right of a widow to any part of her husband's estate of inheritance in lands? The act of the 16th of February, 1816, entitled " An Act respecting devises of lands, joint estates, and dower," commonly called the *dower act*, to distinguish it from the intestate law is, in brief, this—that a widow who has not relinquished her right to dower by some valid instrument, shall, for the term of her life, have one-third part of all the lands of which her husband was seized of an estate of inheritance at any time *during their marriage*, free from any alienations, covenants, debts, liens, and incumbrances made, entered into, contracted, or created by him, *since the passage of said act.* This was dower at the common law, except that by such law no alienations, covenants, debts, liens, or incumbrances, made, entered into, contracted, or created by the husband at any time after the intermarriage, could affect the wife's right. The common law was therefore more liberal to the widow than the statute of 1816. It cannot be doubted, we think, and we are supported in so concluding by the case of *Layton* v. *Butler*, 4 *Harr.* 507, that the design of the statute of 1816 was to enact the common law in this State, subject to its non-application where the acts of the husband mentioned in it had taken place before its passage. To our minds it is very clear that in this case the appellant can make no claim whatever to dower *under that statute*—her husband having died before his sister, Mrs. Leonard, the *cestui que trust* for life, the remainder, limited to him and his brother upon the contingency of her dying without issue to survive her, never vested in possession in him, and of it, therefore, he cannot, with any propriety, be said to have been *seized*. For *seizin*, as contemplated by that act, means either the actual possession of freehold property with a title to it of an inheritable nature then vested, or a right by virtue of such title to have such possession immediately. Of course, the

appellant's husband had no possession in his lifetime of his remainder, and he had no right to such possession, for the freehold estate was outstanding in those who, under the will of Samuel Bush, were entitled to it.   So that on no account could the appellant assert a claim to dower under the act of 1816. This would seem to be very plain, in fact, her counsel does not rest her claim upon such ground, but contends that by the language and the true meaning of the intestate law of this State, *Revised Code of* 1874, *page* 514, and according to equity she is entitled to have invested for her benefit one-third part of the proceeds of the sale of one-half part of the lands in which her husband and his aforesaid brother had a contingent remainder in fee, so that she may receive the income of it during her lifetime, which is the same as claiming that by such law she, upon her husband's death intestate, became entitled to dower in his contingent remainder *quando* the contingency happened provided for in the will of his father, her plea being that her husband came within the terms of the intestate law, having died intestate of a "title or right," of a *legal* nature in fee simple in "lands, tenements, or hereditaments," to wit, a contingent remainder in fee of one moiety of the real estate devised by the testator in trust for his daughter, Mrs. Leonard, for life.   The question then is a simple one, though its solution involves much consideration—Is the appellant entitled to dower in the contingent remainder of her deceased husband ?   If so, she is, of course, entitled in equity to have the investment made for her benefit of one-third of the proceeds of the sale of one moiety of the real estate devised in trust for Mrs. Leonard for life.

If the question were upon the mere words of the intestate law without any reference to the law of dower as understood by the courts and the bar, we might possibly adopt the view presented by the appellant's counsel and say that her claim is a valid one; for those words are, " *When any person having title or right, legal or equitable, to any lands, tenements, or hereditaments in fee simple shall die intestate of the same, such lands, tenements, and hereditaments shall descend in fee simple in coparcenary according to the following course or order, to wit:*" which order is set forth in five clauses immediately following, and then

comes the following language with respect to a surviving husband or wife: "*The descent of intestate real estate shall, in all cases, be subject to the rights of the surviving husband or widow, that is to say,*" * * * * * * "*if the intestate leave a widow and also any child, or lawful issue of such child, said widow shall have one-third part of the real estate aforesaid for the term of her life as tenant in dower.*"

The language used by the legislature with respect to the subject of descent is certainly very strong, and considered merely as an abstract expression of the will of the General Assembly, would be hard to treat as meaning aught else than that a man's widow should have her third of every right, legal or equitable, vested and in possession, or contingent only to lands, tenements, or hereditaments of which he died holding an inheritable estate intestate. In this case the appellant's husband had, at the time of his death, and of which he died intestate, leaving her and issue to survive him, a good right in fee simple in a moiety of the lands devised by his father, Samuel Bush, to his daughter, Mrs. Leonard, though such right or title never could be enjoyed in possession but in the event of her dying childless leaving him to survive her. It was more than a mere possibility, however ; it was a possibility coupled with an interest, such an interest as was devisable by him, and, in fact, descended under this same statute to his heirs. If it had been a possibility simply, no such question could have arisen as this appeal presents, nor could any such interest have been predicated of it as title or right in any sense. A mere possibility is no estate, interest, title, or right, of which any thought can be taken in a court of law or of equity, being nothing in legal contemplation. But a possibility coupled with an interest is a title and a right. Such is a contingent remainder, and such was the estate of the appellant's husband under his father's will. It is unnecessary to cite any authorities to show what a mere possibility is : the expectation of an heir-at-law is such, and is wholly without transferable or transmissible quality. But a contingent remainder has an *interest* legally connected with it and is devisable and descendible, which a mere possibility is not.

It is said that the origin of the law of dower is veiled in the

obscure mists of the past; but the provisions of it, as a common-law right, stand out upon every page of the law of inheritable real estate. As a common-law interest purely, we do not think it can be conclusively held ever to have existed in this State (and we rather incline, upon this subject, to the opinion expressed by the Superior Court in the case of *Coulter* v. *Holland*, 2 *Harr.* 330, than to that given by the chief justice in the case of *Layton* v. *Butler* in the Court of Appeals, 4 *Harr.* 507), for the enactment of the law of 1816 was made necessary to place a widow in Delaware upon the same footing as her sister in England held. By the common law the widow's right to a third of her late husband's freehold of inheritance to hold as tenant in dower was free and clear of any alienations or incumbrances of his after the marriage; but that was not the law here from the earliest times, and is not so now except in cases of marriage since the 16th of February, 1816, the time when the act passed. Before that act the widow's right, whatever it was and whencesoever derived, was subject to her husband's debts, however and whenever created. It was to do justice to her, as we may suppose, that the dower act of 1816 was passed. If she had any right before that time that was not created or controlled by the provisions of the intestate laws of the State we have not seen any evidence of its recognition by the courts. It could not be the common-law right, for debts were subordinate to such right; whereas here they were always paramount until the act in question. The language of the intestate law of 1750—24 Geo. II —which superseded all the previous acts (*Vol. I, Del. Laws, p.* 284) shows it; all the modifications of that law made since affirm this also. We will examine the statute law of this State in justification of this view.

The payment of a man's debts seems to have been with those who instituted government in this region an object of such importance that all considerations of family obligation or interest were postponed or subordinated to it. With this subject as illustrative of the sense of justice they entertained we have in this case nothing to do; but we may, we trust not improperly, commend their acts as an example of that stern sense of duty morally which ought to be emulated by their posterity in all their dealings and

transactions, public as well as private—though we may not approve of all that resulted from it. We may condemn the subjection of the wife's right to that of creditors; but they doubtless thought it merely a *preference* among creditors—her rights as a creditor (which a widow is to be considered) being subordinated to theirs. If they treated the matter in that light any one can see how the case of other creditors differed in the view of the early lawmakers from a wife creditor—she obtaining advantages to which they could make no claim, and they having given full valuable consideration for the debts owing to them by her husband.

In accordance with such supposed view of the early inhabitants at a remote period, viz.: in the 34th year of the reign of Charles II, 1682—the date of Penn's feoffment of the three lower counties—an act to be found at page 11 of the *Appendix* to *Vol. I* of the laws was passed by which lands and goods are made liable to pay debts except where there should be legal issue, and then one-half the land only in case it were bought before the debts were contracted. In the next year (1683) another act was passed (*App. p.* 11) directing how the estate of a person should be disposed of, which provided that one-third should go to the wife, one-third to the children equally, and one-third as he pleased, and in case he left no wife two-thirds to the children and one-third as he should think fit—*his debts being first paid.* (Here was a restraint upon the power of devise.) In the same year (*App. p.* 17) an act was passed directing how the estate of an *intestate* should be disposed of, which provided that it should go to his wife or children, and if he had none to his brothers and sisters, etc. Following this also in the same year (*App. p.* 17) was passed another act upon the same subject but more in detail, by which it was enacted that the estate of an intestate should be disposed of by giving one-third of the personal to the wife, and one-third of the real to her during her life, the remainder, with the other two-thirds, to go to the children, the eldest son taking a double share, etc., with a proviso that his or her (the intestate's) *debts be first paid,* and that claim by any should be made in three years. In 1688 (*App. p.* 18) another act was passed which subjected lands to

*sale* for payment of debts, but not until after the expiration of a year from the time the judgment was obtained, so that the owner might redeem upon an appraisement made by twelve men, with a proviso that the chief plantation was to be the last executed. In 1693 (5th William and Mary) an act was passed about testates' and intestates' estates (*App.* 20), which provided more in detail for their disposal, directing that the whole should be liable for debts, establishing the order of their payment, and a rule for the distribution of the residue, with a proviso that where the personal estate was *sufficient* to pay the debts the real estate of testators should be invested and remain as their last wills and testaments devised the same; and one-third of all *intestate* lands to be to the . wife for life, the residue to be distributed as before directed with reference to surplus personal estate, with a proviso that an intestate's relations or persons concerned who did not lay legal claim within three years should be barred. Afterward, in 1694 (6th William and Mary), an act was passed which provided that where any person should die intestate, being *owner* of lands and left issue, it should be lawful for his widow or administrator, in case of considerable *debts*, charge of child or children, to make sale of such parts or tracts as the county court or council should think fit toward defraying the debts, the education of the children, and the better improving the remainder of the estate to their advantage. (*App. p.* 23.) Then came the law about testates' and intestates' estates, passed in the 9th of William and Mary (1697), subjecting all real and personal estates of deceased persons to the payment of debts and providing that after the debts *are all paid* and where the personal estate was sufficient, the real estate of a testator should be disposed of in manner following, that is, with respect to the estate of testators, that it should go according to the will, provided, that not less than one-third should be *allowed and invested* in the widow during her life unless other equivalent provision had been made for her by the testator, and one-third of all intestate lands to be to her for life, and the residue and remainder to be allotted and distributed in the same manner as the surplusage of *intestates'* personal estates—the distribution to be made by the register-general, and those to whom shares were allotted to give refunding bonds with surety—and extending

the time for claims by relations or persons concerned to seven years. (*App. p.* 24.)  In the 12th year of William III (A. D. 1700) another act was passed with this title, " An Act for ascertaining the descent of lands and better disposition of the estates of persons intestate " (*App. p.* 26), which, "for the prevention of disputes and contests at law or otherwise concerning estates real or personal of persons dying intestate, and *for the more equal payment of the debts,*" provided that all lands, tenements, and hereditaments, and all personal estates whatsoever which any person hath or is *seized* or possessed of, in his or her own right at the time of his death, should be liable to be seized and sold by the executor or administrator, and directing that where the personal estates of testators are sufficient to pay their debts, not less than one-third of the real estate should be allotted to the widow for life, except where equivalent provision had been before made for her by the testator, and one-third of all intestates' lands should go and be allotted to the widow for life, with the same provision as to refunding bond as above.  In the same year of 1700 there was passed an act which provides that if any person die intestate, being *owner* of lands within this province or territories thereof, and leave legal issue behind him but no sufficient personal estate for their maintenance, on paying of debts it shall be lawful for the widow or administrator to make sale of such part or parcel as the Orphans' Court should think fit toward defraying the just debts of the intestate, the education of his children, and improving the remainder of the estate (if any be) to their advantage. (*App. p.* 30.)  We now pass forward to the year 1706 and find the act entitled " An Act for ascertaining the descent of lands and better disposition of the estate of persons dying intestate," which (following substantially the first act above referred to of the 12th of William III) provides, *inter alia,* that after *intestate's debts have been paid,* widow to have one-third for life.  (*App. p.* 50.)  Then, after a long interval, came the act of 1721 (*App. p.* 55) " for the better settling of intestates' estates," which law applies to personal as well as real estate, and contains, with others, a provision that if any person die intestate, being *owner* of lands and tenements and leave issue and no sufficient per-

sonal estate to pay his debts and maintain his children, his executor or administrator may sell such part of the land for that purpose as the Orphans' Court may direct from time to time— provided that no lands contained in any marriage settlement should be so disposed of contrary to the form and effect of the settlement, and after other provisions with respect to division of the land not necessary to be sold for payment of debts, called *surplusage or remaining part*, among the heirs as tenants in common, contains a clause enacting that the widow of the intestate shall have the full third as her dower in the lands whereof her husband died *seized*, which dower she shall hold as tenants in dower do in England. This repealed the act of 1706. This act was followed by that of 1742 (*App. p.* 62), which repealed all prior acts for the settling of intestates' estates, but re-enacted substantially most of the essential provisions of the repealed acts— providing among other things that where persons died intestate, being *owners* of lands and who should not have disposed of the same in his or her lifetime by will or otherwise, the widow should have one-third unless otherwise provided for by marriage settlement ; and it is afterward provided that in case of a deficiency of personal estate to pay the debts and maintain the children, it should be lawful to sell the land for the purpose, but not any contained in a marriage settlement, the sale to be made if allowed by the Orphans' Court. This act remained in force until the 24th of George II (A. D. 1750) when it was in turn repealed, and another act (*vol.* 1, *p.* 284) passed in its stead, being an act "for the better settling intestates' estates" (which is the same in substance as the act last cited), the 10th section of which subjects the widow's third given her by the 5th section of it, as well as the residue, to sale for the payment of debts and the maintenance of the children, with a provision that no lands and tenements contained in any marriage settlement should be sold or disposed of contrary to the form and effect of such settlement. It is true that subjection of the wife's right is not made in terms, but the provisions of the 10th section, as well as similar ones in the repealed acts, are inconsistent with any other construction, keeping in mind what we have assumed as the purpose of our ancestors, to do exact justice to

pecuniary creditors, and prefer them to any claiming by or through the husband except with reference to settlements before marriage in favor of the wife. This view of the purpose of the early settlers of this region with respect to the estates they might leave enables us to understand all their legislation we have referred to ; without taking it we should be involved in a maze of confusion and difficulty. The property of a deceased person, both real and personal, should, in their opinion, be subject in all cases to the payment of debts before any claim was to be made upon it by those who founded their right upon their connection with him. As the widow was in such respect *in pari materia* with his heirs or devisees, her claim was subordinated or postponed to that of creditors simply.

The law remained thus until the passage of the act of the 16th of February, 1816, before mentioned, which is in brief as before stated, and is to be found on page 533 of our last code. This act established a different rule and conformed the law of this State to the English or common-law rule of dower, except that by it all debts contracted before the act passed had still a preference over dower. [It is an interesting fact that opposition was made to the law because it subordinated debts made afterward by the husband to the widow's claim, and that the late Judge Hall expressed in writing while the bill was on its passage his objection upon that ground.] At this time the statute of 1816 is practically the same as the common law of England was at the time it was passed, and all debts created by the husband alone after marriage are subject to the wife's dower. Her claim is preferred to that of other creditors, for, as before said, she is a creditor as well as they, and was thought in 1816 a more meritorious one, being, in legal contemplation, a purchaser of her right when she became wife.

It may be thought that all this has really nothing to do with the present appeal, which is from the chancellor's decree denying the widow of George Bush, the appellant, her claim to have one-third of the proceeds of one-half of the real estate devised by his father, Samuel Bush, in contingent remainder to said George, invested for her benefit. It is true that to a certain extent it has nothing to do with that question, because

George Bush did not leave any debts to be paid out of it, but it has something to do with the question considered, what was the law of dower in this State prior to 1816; it being our view that never until that act was passed had she any such claim of dower as widows had in England down to that time, although her estate, after assignment, was legally the same. And we thus agree with the Superior Court in *Coulter* v. *Holland*, before referred to. We have entered upon the consideration of her right generally, as it was understood in this State, to sustain our position and that of the Superior Court, that hers was not the common-law right, strictly, because of liability to debts. The intestate law recognized her right, as at common law, but as subject to debts.

Having disposed satisfactorily to our minds of the nature of the widow's right to dower in this State down to 1816, it is not necessary to consider whether that act did or did not modify the law of the State then existing as we have construed it, because the claim made in the case before us is not under that act, but under the intestate law of 1827, which repealed all former acts, such law having been continued in substance to this time. And to be entirely just in all respects, we call attention to the fact that although the word *seized*, in two of the acts before cited, would indicate, we think certainly, that a legal estate in fee simple was in the contemplation of the makers of the law, yet the term *owner* is used in the later acts, which would seem to warrant the conclusion that by adopting it the legislature intended a meaning of wider significance than the term seized applied to an intestate person would bear. We might feel inclined to yield to such inference were we left to our own notions of what the legislature meant by the use of that term, for it is a broad one and embraces, seemingly, every sort of inheritable interest of which a person might die intestate. But we are not left to our own impressions merely upon that subject for, in the first place, it did not embrace equitable estates so as to give dower in them, nor, secondly, was it treated as having any other meaning than that of a person seized; the three cases presently to be cited upon the point of *seizin* sustains the first view, and the last is supported by the caes of *Joseph Walton, petitioner,*

v. *Priscilla Carlisle*, heard by Chancellor Ridgely, in the county of Sussex, on the 21st of July, 1819, and which required that the meaning of the term *owner* in the intestate laws then in force should be given. It was a case for division, but where the intestate was not in possession at the time of his death, and the chancellor dismissed the petition, denying partition of the premises because the intestate " *did not die the owner* " of the land, " *that is, he was not seized and possessed of it at the time of his death.*" Afterward several cases were heard before the same court, two in that county and one in Kent, involving the same question substantially—that is, what kind of *ownership* was necessary to give a widow dower in the lands of her husband, and in each of them it was distinctly held that he must have had *legal seizin*, such as gave him at law the right to immediate possession, whether he had such possession or not. These cases are cited in the brief of the counsel for the appellees and are the following : *Whittington Johnson's Widow, Kent,* 3 *Ch. Ridgely's Notes* 396 (1821) ; *Lofland and Wife* v. *Phillips, Sussex,* 4 *Ridgely's Notes* 152 (1823) ; *Bloxom* v. *Hudson, Sussex,* 4 *Ridgely's Notes* 238 (*Ibid.*), the last of which was decided in 1823, four years before the act of 1827. Whatever may have been the view of the law with some with respect to the rights of a widow to dower or thirds, it would seem to be quite certain that, down to the time of the last of these cases at least, there was no doubt in the minds of the bar of this State that the dower right was subordinate to debts created before the act of 1816 passed, and that where it was claimed under the intestate law it was not only subject to all debts whenever contracted, but could only exist at all where the husband was *seized* at the time of his death—the term *owner*, according to such high authority as Chancellor Ridgely, meaning a person *seized*—a proprietor of a legal estate of inheritance in possession.

In 1827 the intestate law was re-enacted, but modified so as to place widows of *cestuis que trust* dying in possession of the trust estate upon the same footing as those of legal tenants of the present inheritance. Such we understand to have been the chief design of the modification, if not the only one, and as that act was passed fifty years ago, and with respect to its essential lan-

guage concerning the question before us has never been altered, we are required to give it a construction warranted by the import of that language as we understand it.   In the absence of any personal knowledge concerning the use of the terms employed in the act of 1827 to define the kind of estate that was to be the subject of assignment of dower and division in the Orphans' Court, we are compelled to rely upon what would seem to have always been the understanding of the profession as to their meaning, which is that they were not intended or supposed to enlarge that of the word *owner*, as used in the later acts we have cited and which had before received the judicial interpretation given to it in the case of *Walton* v. *Carlisle*.   The words *title or right* in that statute, and as employed in the subsequent re-enactment of it in both codes of 1852 and 1874, have always been understood, where a legal estate was the subject, as not amplifying the sense of the word *owner* previously employed, but as intending to express the legal notion of proprietorship of an inheritable estate in possession, and this view is strengthened by the provision in them that proceedings for partition shall not be taken with respect to lands not in the actual possession of the intestate at the time of his death, etc.   Such provision must, we confidently think, have been used to adapt the law to the views expressed by Chancellor Ridgely with respect to the meaning of the term owner—that is a person *seized*.   If so, then *ownership* of lands, held by legal title, and *seizin* of them are convertible terms, and the chancellor was right in his decree.   The fact that it was not appealed from would seem to be conclusive of acquiescence by the profession in it.

Taking this view, how can George Bush, the husband of the appellant in the case before us, be said to have had at the time of his death such title or right as entitles her to have invested for her benefit a third part of the lands devised in contingent remainder to her husband and his brother?  We do not see how it can be.  He surely had no *seizin*, nor the right to any, because he died while a valid legal estate (that of the trustee of Mrs. Leonard) was outstanding and undetermined.   There is no case to be found in the jurisprudence of this State where a widow was given dower (except in equitable estate since 1827) unless

her husband had a legal *seizin* of an inheritable estate at some time during the coverture. The freehold as well as the inheritance must be in the husband or no right of dower can attach. This is an elementary principle of the law of dower familiar to every student even. The freehold in this case never was in George Bush under his father's will, but was outstanding, as before said, and he died before the event happened which could vest in him his contingent remainder. To sustain the widow's claim in this case would, we think, be overturning all the rules of law with respect to right of dower, which rules apply to such rights here as well as at common law. There is no modification of the common-law *title* to dower in this State except that equitable estates are included in the intestate law. It is true that in a case of application under that law, where the widow and heirs all claim from or under the same person, the heir is not allowed to dispute the *seizin* of the husband because his own claim is founded upon it (*Griffith* v. *Griffith*, *5th Harrington, p.* 5), but in this case the right of George Bush's children does not depend upon his *seizin*, for it never existed, and they can resist as a stranger could. We have been referred to a case in Pennsylvania by the appellant's counsel, that of *Cote's Appeal*, decided in the Supreme Court of that State (*No.* 6, *Vol.* 1, *Law and Equity Reporter* 197) which seems in conflict with this opinion; but that decision was made under a peculiar act of assembly of that State, which treats the widow more as a party taking by descent than otherwise, and blends together the real and personal estate of a decedent; her claim under that law can hardly be called *dower* as we understand that term, and as dower is secured to her in legal estates under our intestate law, with respect to which law no one has ever suggested in a court of this State that the *dower* there, whether recognized as her right or conferred by its provisions, is in any sense different from that enjoyed by widows under the common law, except that it is subordinate to the payment of the intestate's debts. We are neither bound by nor have we any inclination to follow the Pennsylvania decision, founded, as it is, solely upon the intestate law of that State, for by so doing we should oppose our own sense of right in the case

before us, and also the understanding of the profession in this State as to the law of dower or thirds.

I am, therefore, of the opinion that the decree of the chancellor should be affirmed.

*Wales, J.:* Samuel Bush devised real and personal property to his son, David Bush, in trust for the sole use and benefit of the testator's daughter, Rebecca Leonard, during her natural life, and to the issue of the said Rebecca who might be living at the time of her death, "the real estate in fee simple and the principal of personal absolutely;" but should Rebecca die leaving no child to survive her, then to his two sons, David and George, in fee. Rebecca Leonard survived her father and her brothers, David and George, and died without issue. Proceedings having been instituted in chancery for the partition of the real estate thus devised, the widow of George Bush claimed dower in the share to which her husband would have been entitled had he survived his sister, Rebecca. The chancellor decided against the claim on the ground that George never had an equitable estate in fee simple, or such an estate of freehold and inheritance at one and the same time in the land devised by his father as would support the widow's right of dower. From this decision an appeal has been taken.

At common law the right of dower could not attach upon any estate of which the husband had not been *seized* either in deed or in law at some period during coverture. A mere right to or interest in land, unless accompanied by technical seizin, was not sufficient to confer a title of dower. Conveyance by feoffment and livery of seizin was never generally adopted in this country, and in Delaware legal seizin could always be acquired by deed of bargain and sale, by descent, devise, or assignment; but notwithstanding that the solemn formalities of actual livery which were once required by the law of England were never recognized in this State, the rule of the common law making a legal estate in the husband a prerequisite to the right of dower was retained in force until the year 1827, when by a statute passed in that year the estate of the husband subject to dower was enlarged so as to embrace lands, tenements, and heredita-

ments to which he had "title or right, legal or equitable," in fee simple, and it is upon the construction of this statute that the appellant claims to be dowable in the lands devised to her husband. It is contended that George Bush had a contingent interest in the land which he might have conveyed away or assigned during his life and also an estate of inheritance, and that both combined invested him with a dowable estate. But this position is not sustained by precedent or principle. Dower is not allowed in estates in remainder or reversion expectant upon an estate of freehold, and hence if the estate of the husband be subject to an outstanding freehold estate which remains undetermined during the coverture no right of dower attaches. 1 *Scrib. on Dower* 218. In this case there was an outstanding freehold in a trustee for the benefit of Mrs. Leonard which was determinable at her death, and only on the failure of issue surviving her was one-half of the real estate to go to George Bush. So that, dying in the lifetime of Mrs. Leonard, he never had an estate of freehold, or an estate in fee simple, legal or equitable. His interest was purely a contingent one.

*Mr. Park*, in his treatise on Dower, puts a parallel case. To let in the title of dower the particular estate must determine or be destroyed in the lifetime of the husband. Although the wife should survive the husband, and afterward, during her life, the particular estate should determine, she would not thereby acquire any right to be endowed of that estate, because there was no seizin during coverture of such an estate as her title could attach upon. *Park on Dower* 76. It is true, dower is here excluded for the want of legal seizin in the husband, but in a preceding part of the treatise he lays down the general rule that the estate of the husband should confer the right to the immediate freehold, that is, the first estate of freehold, bestowing the present enjoyment except so far as that enjoyment may be subject or postponed to terms for years or other chattel interests. *Ibid.* 53. The question here is whether the husband of the claimant had "title or right, legal or equitable, in fee simple." Under his father's will he had a contingent interest liable to become vested upon the death of Mrs. Leonard without issue during his lifetime, but that event did not happen, and therefore no freehold

estate was vested in him. On his death his heirs took, not by descent but by limitation in the will of Samuel Bush, as contingent devisees, and thus he had no estate of inheritance. *Adams* v. *Beekman,* 1 *Paige* 631. It does not appear that he ever had an equitable estate in fee simple as required by the statute under which this claim for dower is made. This statute did nothing more than to extend the dower right of the widow to equitable estates in fee as well as to legal estates, but did not remove or extinguish the other prerequisites to dower as established and enforced at common law. One of these conditions is that the freehold and the inheritance must be in the husband *simul et semel,* "at once and together." There must be no intervening vested freehold estate in a third person between the freehold and inheritance of the husband; the inheritance as well as the freehold must be in possession. In other words it must be the immediate inheritance and not an inheritance expectant upon an estate of freehold in any other person. The interposition of a mere possibility, so that it be of a freehold nature between the life estate and inheritance of the husband, will, so long as the possibility exists, prevent the title of dower from attaching. Its effect is not merely to defeat the right of dower upon the happening of the possibility, but to absolutely prevent it from coming into existence unless the possibility be determined during the coverture. 1 *Scribner on Dower* 234; *Park on Dower* 72 ; and the cases there cited. It is upon this principle that dower is denied to estates held in joint tenancy—the possibility of survivorship operating to prevent dower from attaching.

Dower is a meritorious claim and is favored at law, but should not be allowed in contravention of well-settled principles and rules. These may appear to be artificial and unreasonable in their application to particular cases, but they have been established and recognized for such a length of time in determining questions of this kind that, in the absence of special legislation, it would be dangerous to depart from them, and in no other branch of the law of real property is it more vitally important that courts should adhere to the maxim *stare decisis.*

*Wootten and Houston, Judges,* concurred.